# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS ZITKO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 6727 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Zitko brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying his application for disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

Plaintiff applied for disability benefits on February 27, 2008, alleging a disability onset date of January 1, 2001. (R. 335.) The application was initially denied on June 12, 2008, and again on reconsideration on November 21, 2008. (R. 199-200.) Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on July 23, 2010. (R. 159-98.) On March 15, 2011, the ALJ denied plaintiff's application and found him not disabled under the Social Security Act. (R. 204-17.)

On May 1, 2012, the Appeals Council remanded the case to the ALJ for a new hearing, which was held on December 21, 2012. (R. 88-158, 222-25.) On February 21, 2014, the ALJ issued a decision finding plaintiff not disabled. (R. 29-80.) The Appeals Council denied review

(R. 9-12), making the ALJ's decision the final decision of the Commissioner, reviewable by this Court under 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is

capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since he applied for benefits. (R. 35.) At step two, the ALJ found that plaintiff had the severe impairment of "Major Depression with Psychotic Features." (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (R. 74.) At step four, the ALJ found that plaintiff had the RFC:

> [T]o perform a full range of work at all exertional levels . . . with the following limitations: The claimant is able to write his name but is functionally illiterate. He is able to maintain concentration leading to on task productivity with a moderate limitation, which I peg at a residual of 90% of the workday. He could have occasional contact with supervisors and co-workers but should have no contact with the general public. He has no problems with attendance. He should avoid working at unprotected heights and with dangerous unguarded machinery. He should not use sharp objects in the workplace. . . .

(R. 76.) At step five, the ALJ found that jobs exist in significant numbers in the economy that plaintiff can perform, and thus he is not disabled. (R. 79.)

Plaintiff contends that the ALJ erred in "ascrib[ing] slight weight" to plaintiff's credibility. (*See* R. 77.) Defendant recently issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminate[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Though SSR 16-3p was issued after the ALJ's decision in this case, it is appropriate to apply it here because it is a clarification of, not a change to, existing law, *see Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir, 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999) (stating that courts give "great weight" to an agency's expressed intent to clarify a regulation), and is

3

substantially the same as the prior regulation. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), *with* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Under either regulation, the ALJ "is in the best position to determine the credibility of witnesses." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Thus, the Court will "overturn a credibility determination only if it is patently wrong" *id.*, that is, it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ's skepticism stemmed, in part, from the fact that the evidence supporting plaintiff's claim came from an October 2009 examination he had for the express purpose of obtaining disability benefits. (R. 42-43; *see* R. 548 (stating that the exam was to "assess [plaintiff's] cognitive functioning, personality functioning and psychiatric status in light of his Social Security claim").) On the basis of that exam, Dr. Puntini said that plaintiff: (1) is "severely depressed"; (2) has "auditory hallucinations"; (3) had been "unable to function normally" since his father's death in 2003; (4) spends seven to eight hours a day in the fetal position; (5) "relies on his mother to make all of his decisions" because he "can't function on [his] own"; (6) has intellectual functioning "in the Mentally Retarded range"; (7) has reading skills at the "pre-school level"; and (8) has poor "interpersonal functioning." (R. 548-60; *see* R. 186-93 (testimony of independent medical examiner, Dr. Cools, from the first hearing endorsing Dr. Puntini's conclusions).)

The ALJ said, however, that plaintiff's medical records from December 2005 to October 2009 cast serious doubt on these conclusions. Those records show that plaintiff repeatedly visited doctors' offices and hospital emergency rooms seeking medication to treat a blood clot in his leg, and for treatment of injuries he sustained in a car accident and from a dog bite, without manifesting symptoms of, seeking treatment for, and/or indicating he had, any mental

impairment. (R. 35-41; *see* R. 468-78, 509-11, 513-17, 524-46, 579-88, 590-96, 600-43, 645-48.) Moreover, on April 30, 2008, an agency consultative examiner found that plaintiff was "oriented in all 3 spheres," "normal" in "[m]emory, fund of knowledge, calculations . . . [,] judgment . . . . [,] [a]ppearance, behavior and ability to relate during the examination," and "appropriate, polite, pleasant and cooperative and able to relate a clear, concise, coherent medical history without apparent cognitive difficulties." (R. 481-82.) Based on the exam, and a photocopy of a March 2005 prescription from Dr. Cordero that said plaintiff "had a history of chronic depression . . . for which he was getting Zoloft," the examiner concluded that plaintiff had "[w]ell controlled depression." (R. 479-82.) Similarly, in June 2008, after reviewing plaintiff's records, agency consultant, Dr. Hollerauer concluded that plaintiff had "'well controlled'" depression, with no limitations in activities of daily living and social functioning, no episodes of decompensation, and only mild limitations in concentration, persistence, and pace. (R. 484-96.) Moreover, in November 2008, after Dr. Cordero told the agency that plaintiff had "no evidence of depression [and] normal mental status," the medical consultants who reviewed plaintiff's file noted that "he never complains of depression" and "[his] mental status is [within normal limits]." (R. 518-21.)

The ALJ also noted the inconsistencies between what plaintiff told Dr. Puntini about his daily life activities and the information he gave about them at other times and places. For example, plaintiff told Dr. Puntini that had always lived with his parents, was totally dependent on his mother, and had not gone anywhere alone in twelve years, *i.e.*, since 1997. (R. 548-49.) Yet, in the function report he gave to defendant, plaintiff said he lived with friends, had a girlfriend, and worked prior to 2000. (R. 362-70.) Further, his medical records from the period

2005-09 often note that plaintiff sought treatment alone and gave names of people other than his mother as his emergency contact. (*See* R. 362-70, 511, 516, 579, 594, 600, 603, 612, 616, 641.)

Also significant to the ALJ was the report of agency consultative examiner Dr. Neufeld, who was skeptical about the skill level plaintiff displayed, noting that plaintiff was dressed like "a caricature of a 'victim,'" despite being "verbally rather coherent and lucid." (R. 670.) Based on the results of the tests he conducted, Dr. Neufeld opined that plaintiff has "[d]elusional disorder, persecutory type," [m]oderate mental retardation," and "[d]ependent personality disorder," but cautioned that "[t]he results may not be valid or reflective of [plaintiff's] general level of cognitive capacities, given his adequate level of verbal sophistication." (R. 674.)

The ALJ also said that the timing and duration of plaintiff's mental health treatment contrasted with his assertion of having a debilitating impairment. The record shows that plaintiff first sought treatment for depression on March 23, 2011, about a week after the ALJ issued the first decision denying plaintiff's application for benefits. (*See* R. 684, 713.) Moreover, though plaintiff was given a "psych ref list" on that date (R. 713), he did not seek mental health treatment until June 2012, shortly after the Appeals Council remanded his case, and stopped that treatment just three months later. (*See* R. 717-26.) Further, between March 2011 and June 2012, plaintiff was seen multiple times for management of his blood clot medication and other ailments and did not mention depression or seek treatment for it. (*See* R. 687, 691-711.)

The ALJ further noted the variance in plaintiff's reports and testimony about his daily activities, life skills, and social relationships:

> I note that the claimant's statements made within his own testimony on a single hearing day conflict. His statements made between the two hearings conflict. Significantly, his statements and presentation to treating sources conflict with those made to medical sources examining or analyzing the claimant exclusively for the purposes of his pursuit of disability benefits. Despite presenting at hearing portraying himself as an individual who is unable to feed or bathe himself, the

claimant has never been psychiatrically hospitalized. There is a suggestion made that he is protected by his family, however, no witness has testified on behalf of the claimant. At the first hearing in this case, the claimant argued that his treatment was limited because he had only recently received a medical card. In the remand, the Appeals Council noted this allegation and requested that the medical records be updated in recognition of the claimant's statements that he would be able to receive treatment going forward. Yet, the record reflects limited treatment thereafter without the significant mental health services one would expect for an individual portraying himself in the manner of the claimant at hearing. Significantly, although he testified on July 23, 2010 that he had just received a medical card and would be able to secure medical treatment, the first record of seeking mental health treatment does not occur until March 23 2011, less than 10 days after the unfavorable March 15, 2011 decision by this [ALJ].

(R. 60-61; *see* R. 61-62 (noting plaintiff's varied statements about his possession of a driver's license and ability to drive, the degree of his literacy, his work history, and his living arrangements).)

In short, the ALJ thoroughly explained the evidentiary basis for failing to credit plaintiff's statements about his mental condition. Thus, the Court has no basis for setting the ALJ's determination aside.

Plaintiff also argues that the ALJ erred in weighing the medical evidence. In determining the weight to give to such evidence, an ALJ must consider "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c). The ALJ gave "slight weight" to the opinions of Drs. Puntini, Biscardi and Cools, though they are specialists in mental health, because Dr. Puntini's opinion was obtained solely for the purpose of supporting plaintiff's benefits application, all three doctors relied heavily on plaintiff's representations, which the ALJ found incredible, and Drs. Biscardi and Cools did not acknowledge or explain the inconsistencies in the record concerning plaintiff's mental condition and ability to function. (R. 69-73.) The ALJ gave moderate weight to the opinion of Dr. Neufeld, who "recognized the obvious

discrepancies between [plaintiff's] presentation, performance on testing and his verbal sophistication" and concluded that plaintiff had a moderate impairment in functioning, and those of Drs. Hollerauer and Jackson, who "noted the unremarkable presentation of [plaintiff] . . . at the time of his evaluation and the lack of objective support" for his claims of severe impairment. (R. 71, 73.)

Plaintiff argues that this is not the ALJ's assessment of the medical evidence, but his substitution of his own opinion for that of the experts. The Court disagrees. "An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see Turner v. Astrue*, 390 F. App'x 581, 585 (7th Cir. 2010) (same). That is precisely what this ALJ did. Therefore, the Court finds no error.

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision, denies plaintiff's motion for summary judgment [15], and terminates this case.

**SO ORDERED.**                    **ENTERED:  February 14, 2017**


_____
**M. David Weisman**
**United States Magistrate Judge**